UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                          )
IN RE:                                    )   CASE NO.         06-31856 (LMW)
                                          )
  DALE J. PORTER,                         )   CHAPTER          13
                                          )
          DEBTOR.                         )   DOC. I.D. NOS.   42, 43, 46, 47, 48, 49,
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -                   52

## APPEARANCES

| | |
|---|---|
| David F. Falvey, Esq.<br>Action Advocacy P.C.<br>258 Route 12<br>Groton, CT 06340 | Attorney for the Debtor |
| Molly T. Whiton, Esq.<br>10 Columbus Boulevard<br>Hartford, CT 06106 | Chapter 13 Trustee |
| Amon James, Esq.<br>265 Church Street, Suite 1103<br>New Haven, CT 06510 | Assistant U.S. Trustee |
| B-Line, LLC<br>Attn: **Managing Member**<br>2101 4th Avenue, Ste. 1030<br>Mailstop 550<br>Seattle, WA 98121 | Claimant |
| Portfolio Recovery Associates, LLC<br>Attn: **Managing Member**<br>P.O. Box 41067<br>Norfolk, VA 23541 | Claimant |
| Vativ Recovery Solutions, LLC<br>Attn: **Managing Member**<br>P.O. Box 19249<br>Sugar Land, TX 77496 | Claimant |
| Asset Acceptance LLC<br>Attn: **Managing Member**<br>P.O. Box 2036<br>Warren, MI 48090-2036 | Claimant |

| | |
|---|---|
| Premier Bankcard | Claimant |
| Attn: **President** | |
| Premier/CSI-Dept SDPR | |
| P.O. Box 95696 | |
| | |
| Max Recovery, Inc. | Claimant |
| Attn: **President** | |
| P.O. Box 10228 | |
| Newark, NY 07193-0228 | |

**MEMORANDUM OF DECISION AND ORDER RE:
DEBTOR'S OBJECTIONS TO PROOFS OF CLAIM**

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are the above-captioned debtor's (the "Debtor") objections (Doc. I.D. Nos. 42, 43, 46, 47, 48, 49 and 52, collectively, the "Objections") to various proofs of claim (collectively, the "POCs")[1] pursuant to Bankruptcy Code § 502(a) and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Rules"). This court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, C.J.).[2]

This matter presents the issue of the evidentiary effect of a proof of claim for a consumer account debt when the relevant supporting documentation is not attached to the proof of claim and some circumstances under which the relevant claim may be disallowed on account of the lack of such attachment.

---

[1] The alleged claim to which a POC relates is referred to hereafter as an "Alleged Claim."

[2] That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C. . . . ."

I.   **BACKGROUND**

The Debtor commenced this chapter 13 proceeding by a petition filed with the court on October 27, 2006. (Doc. I.D. No. 1.) A complete set of schedules (Doc. I.D. No. 24, the "Schedules") was filed by the Debtor on November 10, 2006 and later amended (*see* Doc. I.D. Nos. 72, 73). On that date the Debtor also submitted his proposed chapter 13 plan. (Doc. I.D. No. 23.) The Chapter 13 Trustee filed a Motion To Confirm the Chapter 13 Plan on November 14, 2006. (Doc. I.D. No. 26.) The confirmation hearing is scheduled for September 20, 2007. (*See* Doc. I.D. No. 115.)

II.   **PROCEDURAL BACKGROUND OF THE OBJECTIONS**

The Objections all were filed by the Debtor on January 25, 2007 and were initially scheduled for a hearing on March 22, 2007. The relevant putative creditors (the "Creditors") were given notice of that hearing. At the conclusion of the March 22, 2007 hearing (at which no Creditor appeared), the court took the Objections under advisement. At the hearing, counsel for the Debtor advised the court that he did not intend to proceed to an evidentiary hearing and, if the court determined that it could not sustain an Objection without an evidentiary hearing, the court should overrule such Objection and allow such Alleged Claim as filed.

On May 15, 2007, the court issued that certain Order Requesting Participation of Chapter 13 Trustee, United States Trustee and Other Parties in Interest (Doc. I.D. No. 79) which also scheduled a further non-evidentiary hearing on all the Objections for May 31, 2007 and requested that the foregoing parties appear at such hearing and take a position on certain of the issues discussed below.[3] No Creditor appeared at the May 31, 2007 continued hearing. At that hearing, the court directed

---

[3] In response, the Assistant United States Trustee (the "UST") filed a very helpful brief and personally appeared at the July 12, 2007 (continued) hearing.

counsel for the Debtor to file and serve an affidavit with respect to certain matters and further continued the hearing to July 12, 2007. On June 19, 2007, the court issued that certain Order Requiring Affidavit which clarified the court's prior request for an affidavit.[4]

No Creditor appeared at the July 12, 2007 continued hearing. Debtor's counsel advised the court that he had mistakenly e-mailed an affidavit to the court rather than file and serve it as instructed. A copy of the Affidavit (as defined below) was taken into the record as Debtor's Exhibit 1. In accordance with the court's verbal directions, that affidavit (Doc. I.D. No. 93, the "Affidavit") was filed with the court and served on effected parties the next day. The Objections then were taken under advisement.[5] No Creditor has responded to the Affidavit.

### III. THE POCs

Each POC put in issue by the Objections is described below (as well as the treatment of the respective Alleged Claim in the Schedules).[6]

---

[4]      The order required that such affidavit should

. . .

- with respect to any Alleged Claim scheduled by the Debtor in his [S]chedules in any manner whatsoever (even if scheduled as disputed, unliquidated or contingent), the cause (including the factual basis) for such scheduling . . . .

(Doc. I.D. No. 88 at 1.)

[5]      The hearing on plan confirmation has been continued from time to time to accommodate the foregoing events and, as noted above, is scheduled for September 20, 2007.

[6]      POC Claim Number 1 and POC Number 2 were withdrawn subsequent to the court's taking the Objections under advisement. (*See* Doc. I. D. No. 120 and 119 respectively.) Accordingly, Doc. I.D. Nos. 42 and 43 are moot.

A. **POC Number 9**

POC Number 9 (filed by "Asset Acceptance, LLC assignee of MBNA AM BK," the "Asset Acceptance Claim") asserts a (non-priority) unsecured Alleged Claim for "[m]oney loaned" in the amount of $12,987.02 under account number "26133656." The box (the "Other Charges Box") to be checked "if claim includes interest or other charges in addition to the principal amount of the claim" is unchecked. Attached to the POC are only two documents. The first is an "Affidavit of Account" sworn to by the "Manager of the Bankruptcy and Probate department" of Asset Acceptance, LLC on November 15, 2006. It states in pertinent part:

> The corporations' business records show that there is due and payable on account 26133656 the amount of $12987.02 as of this date on a debt originally held by MBNA AM BK / and assigned to the corporation in the normal course of business by the original creditor or their lawful assignee . . . Said account has been assigned, transferred and sold to ASSET ACCEPTANCE LLC with full power and authority to do an [sic] perform all acts necessary for the collection, settlement, adjustment, compromise or satisfaction of said claim. Further, the undersigned acknowledges that in making the assignment, ASSET ACCEPTANCE LLC is now the owner of this account, and has complete authority to enforce the rights of the original creditor with the debtor, and that the assignor or original creditor has not [sic] further interest in the said debt for any purpose.

(Claims Register, Claim No. 9 (attached Affidavit of Account).) The second attached document states (among other things)[7] the Debtor's name, his Norwich street address, and a balance that reflects the amount of the claim. That document also states the "Last Payment Date" as "12/28/98" which also is the date of debt incurrence listed on the face of the Asset Acceptance Claim.[8]

---

[7] The document also contains other ambiguous or undecipherable entries.

[8] The foregoing suggests that the Alleged Claim may have been time barred under applicable non-bankruptcy law as of the commencement of this case. However, that issue has not been raised by the Debtor.

The Asset Acceptance Claim was not listed in any manner on the Schedules. (*See* Doc. I.D. No. 24 (Schedule F - Creditors Holding Unsecured Nonpriority Claims), "Schedule F".) In the Affidavit the Debtor states the reason for the foregoing as follows: "I did not list this creditor in my bankruptcy schedules because I had no awareness that they even existed. I have no knowledge or records regarding this debt." (Affidavit at 1.)

### B. POC Number 10

POC Number 10 (filed by Premier Bankcard by its agent CSI, the "Premier Bankcard Claim") asserts a (non-priority) unsecured Alleged Claim for "money loaned" and "credit card" in the amount of $390.44 under account number "4610078736074139." The Other Charges Box is unchecked. The "Supporting Documents" language in the official proof of claim form has been altered to read as follows:

> Itemized monthly statements of account were mailed to the debtor pre-petition;[9] claimant is successor owner of this claim. Transferor maintains copies of said statements on microfilm or image processing and reproduction of same absent a dispute as to the balance would be unduly time consuming and burdensome; nevertheless, where an interested party so requests, claimant will search available records to provide copies of said monthly account statements. To request further documentation please call CSI at (707) 447-6677 and ask to speak to the Claims Servicing Supervisor. Claim may include contractual interest and/or late charges.

(Claims Register, POC Number 10.) Attached to the Premier Bankcard Claim is only a one-page "Statement Summary" which includes the Debtor's name, the last four digits of the Debtor's social security number, an account number, and a "Balance" which reflects the amount claimed. (*See id.*)

---

[9] None of the POCs make a sufficient showing of "account stated" to justify this court's consideration of that theory in this default setting. *Cf. Citibank (South Dakota) N.A. v. Smith*, No. TTDCV075001289S, 2007 WL 2038936 (Conn. Super. Ct. June 22, 2007) ("account stated" under Connecticut law).

The Premier Bankcard Claim is not listed in any manner on Schedule F. The Debtor gives the same explanation for the foregoing as he does with respect to the Asset Acceptance Claim. (*See* Affidavit at 1.)

### C.      POC Number 11

POC Number 11 (filed by "Portfolio Recovery Associates, LLC Successor in Interest to Bank of America," the "Portfolio Recovery Claim") asserts a (non-priority) unsecured claim for "Credit Card" in the amount of $22,474.51 under account number "10200126422630001."[10] The Other Charges Box is unchecked. Attached to the Portfolio Recovery Claim is only a one-page "Statement" which includes the Debtor's name, the last four digits of the Debtor's social security number, the name and address of the creditor, the account number, and a "New Balance" in the amount of the claim. (See Claims Register, Claim No. 11.)

The Portfolio Recovery Claim appears to be listed in the Schedules as a contingent and disputed claim in the amount of $21,766.49. (*See* Schedule F.) However, in the Affidavit, the Debtor states:

> Originally, I did not list this creditor in my bankruptcy schedules because I had no awareness that they even existed. I have no knowledge or records regarding this debt. I have never had an account with Bank of America . . . .

(Affidavit at 2.) The foregoing statement is incorrect as to the actual listing of the claim on Schedule F. However, the court infers that this Alleged Claim appeared on the Debtor's credit history which he reviewed prepetition. Accordingly, the court accepts the foregoing statement that the Debtor is unable (on a good faith basis) to concede the validity of the Alleged Claim based on the Portfolio Recovery Claim as filed and on the credit history.

---

[10]     The proof of claim form lists the "[d]ate [d]ebt [w]as [i]ncurred" as September 7, 1995. (*See* Claims Register, Claim Number 11.)

**D.     POC Number 15**

POC Number 15 (filed by "Max Recovery, Inc., Successor to Sears," the "Max Recovery Claim") asserts a (non-priority) unsecured claim for "Credit Card Debt" in the amount of $3,340.18 under an account number with the last four digits "8891." The Other Charges Box is unchecked. Attached to the Max Recovery Claim is only a one-page "Account Summary." That document includes the Debtor's name, a street address in New Jersey, the last four digits of the Debtor's social security number, the name and address of the claimant, and a "Current Balance as of 05/09/00" in the amount of the claim. (See Claims Register, Claim No. 15.) The "Account Summary" also contains the following:

> Pursuant to paragraph 7 Official Bankruptcy Form 10, Proof of Claim, in lieu of attaching voluminous account documents, a summary of the account, compiled from the information contained in the account databases of Sears Max Recovery, Inc. and their agents, if any, is provided. (See Instructions to Official Form 10). This debt arises from the use of a credit/charge card account or other money loaned, the supporting documents for which were provided by Sears Max Recovery, Inc. to the debtor pre-petition. For further information about this claim call 1-800-962-6030 and ask to speak to the Claims Servicing Supervisor. Some documents may no longer be available.

(Claims Register, Claim Number 15 (attachment).)

The Max Recovery Claim is not listed in any manner on Schedule F. The Debtor gives the same explanation for the foregoing as he does with respect to the Asset Acceptance Claim and also states: "I have never had an account with Sears." (*See* Affidavit at 2.)

**E.     POC Number 18**

POC Number 18 (filed by "Vativ Recovery Solutions, LLC as agent for Palisades Collection, LLC,"[11] the "Vativ Recovery Claim") asserts a (non-priority) unsecured claim for "Unsecured

---

[11]     The creditor is listed as "Verizon."

Merchandise" in the amount of $684.35 under account number "2016565548605." The Other Charges Box is unchecked. Attached to the Vativ Recovery Claim is only an "Account Summary" which includes the Debtor's name, an account number, the name of the "Original Creditor," and a "Current Balance" in the amount of the claim. (See Claims Register, Claim No. 18.)

The Vativ Recovery Claim is not listed in any manner on Schedule F. The Debtor provides the following explanation:

> I did not list the creditor, Verizon, in my bankruptcy schedules because I had no awareness that they were a possible creditor of mine. I had no knowledge or records regarding this debt . . . I did list Sprint as a possible creditor because they were on my credit report. However, I believe that I had paid all my bills to Sprint and that I didn't owe them any money.

(Affidavit at 2.)[12]

## IV. THE OBJECTIONS

The Debtor has filed objections to the POCs on grounds including that the POCs are not supported by sufficient documentation. Annexed to each of the Objections is a letter from the Debtor's counsel to the Creditor, each dated January 24, 2007, requesting the information which the Debtor claims to be lacking from the POCs at issue. (*See* Doc. I.D. Nos. 42, 43, 46-49, 52.) No response was received to any of those letters. (*See* Affidavit.) The Objections are described more fully below.

### A. Objection to the Asset Acceptance Claim (POC Number 9)

The Objection to the Asset Acceptance Claim (Doc. I.D. No. 46) states the following:

[T]he Debtor, Dale Porter, disputes that he owes this debt for reasons as follows: 1) This creditor was not listed in his petition. 2) No account number of debtor's can be located with a sequence of 26133656[.]  3) Debtor has written to Asset Acceptance, LLC and requested the following: a) any evidence of how Asset

---

[12] Sprint and Verizon appear to be unrelated entities.

> Acceptance, LLC acquired the alleged debt.  b) who was the original creditor, if anyone.  c) any documentation of a signed contract between the debtor, Dale Porter, and any creditor.  d) any documentation evidencing the charges in the amount of $12,987.02 as against the debtor and the expenditures.  4) Debtor has no knowledge or awareness that he owes MBNA.

(*Id.*)

### B. Objection to the Premier Bankcard Claim (POC Number 10)

The Objection to the Premier Bankcard Claim (Doc. I.D. No. 47) states the following:

> [T]he Debtor, Dale Porter, disputes that he owes this debt for reasons as follows: 1) This creditor was not listed in his petition.  2) Debtor has written to Premier Bankcard and requested the following: a) any evidence of how Premier Bankcard acquired the alleged debt.  b) who was the original creditor, if anyone.  c) any documentation of a signed contract between the debtor, Dale Porter, and any creditor.  d) any documentation evidencing the charges in the amount of $390.44 as against the debtor and the expenditures.  4) [sic] Debtor has no knowledge or awareness that he owes Premier Bankcard.

(*Id.*)

### C. Objection to the Portfolio Recovery Claim (POC Number 11)

The Objection to the Portfolio Recovery Claim (Doc. I.D. No. 48, the "Portfolio Recovery Claim Objection") states the following:

> [T]he Debtor, Dale Porter, disputes that he owes this debt for reasons as follows: 1) This creditor was not listed in his petition.  2) Debtor has written to Portfolio Recovery Assoicates [sic], LLC and requested the following: a) any evidence of how Portfolio Recovry [sic] Associates, LLC. acquired the alleged debt.  b) who was the original creditor, if anyone.  c) any documentation of a signed contract between the debtor, Dale Porter, and any creditor.  d) any documentation evidencing the charges in the amount of $22,474.51 as against the debtor and more specifically any expenditures.  4) [sic] Debtor has no knowledge or awareness that he owes Portfolio Recovery Assoicates [sic], LLC and/or Bank of America.

(*Id.*)

### D.   Objection to the Max Recovery Claim (POC Number 15)

Except for the name of the creditor (Max Recovery, Inc., successor to Sears) and the amount of the debt ($3,340.18), the Objection to the Max Recovery Claim (Doc. I.D. No. 49) is identical to the Portfolio Recovery Claim Objection.

### E.   Objection to Vativ Recovery Claim (POC Number 18)

The Objection to the Vativ Recovery Claim (Doc. I.D. No. 52) states the following:

> [T]he Debtor, Dale Porter, disputes that he owes this debt for reasons as follows: 1) Verizon was not listed as a creditor in his petition. 2) Sprint was listed as a contingent and disputed creditor in the amount of $90. 3) Debtor has written to VATIV Recovery and requested the following: a) who was the original creditor, if anyone. b) any documentation of a signed contract between the debtor, Dale Porter, and any creditor. c) any documentation evidencing the charges in the amount of $684.35 as against the debtor and more specifically any expenditures. d) any telephone numbers alleged to have been debtor's telephone numbers. 4) Debtor has no knowledge or awareness that he owes Verizon.

(*Id.*)

## V.   STANDARDS

When a consumer account debt creditor files a proof of claim, the creditor is entitled to know with a reasonable degree of certainty what the evidentiary effect of that proof of claim will be, including whether the creditor may rely on its proof of claim in default of its appearance. When a potential objector (a debtor or trustee, as the case may be) reviews that proof of claim, the objector is entitled to the same level of certainty on the issue. So is the court. The court does not intend any of the following discussion to canvass the universe of possible scenarios under which a claim objection might be overruled or sustained when a lack of documentation is asserted. However, within the confines of the facts presented here, the court endeavors below to give some guidance to debtors, creditors, trustees and the bar, and some guideposts for itself.

A.     **In General**

Under Rule 3001(f) of the Rules "[a] proof of claim executed and filed in accordance with . . . [the Rules] shall constitute prima facie evidence of the validity and amount of the claim [the "Presumption"]." With respect to the Presumption, in *In re Jorczak,* 314 B.R. 474 (Bankr. D. Conn. 2004), this court adopted the following discussion of the conditions which must exist for the Presumption to arise with respect to a proof of claim and the effect of the Presumption's existence or non-existence:

> A proof of claim, if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure, constitutes *prima facie* evidence of the validity and amount of that claim, Fed. R. Bankr. P. 3001(f), and is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a). A proof of claim, however, does not qualify for that *prima facie* evidentiary effect if it is not executed and filed in accordance with the Bankruptcy Rules. *See First Nat'l Bank of Fayetteville v. Circle J. Dairy (In re Circle J Dairy, Inc.),* 112 B.R. 297, 300 (W.D. Ark. 1989). Rule 3001 generally sets forth the requirements for filing a proof of claim, and one of those requirements states that:
>
>> when a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim. Fed. R. Bankr. P. 3001(c).
>
> . . .
> Hence, the burden of persuasion under the bankruptcy claims procedure always lies with the claimant, who must comply with Fed. R. Bankr. P. 3001 by alleging facts in the proof of claim that are sufficient to support the claim. If the claimant satisfies these requirements, the burden of going forward with the evidence then shifts to the objecting party to produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. *See Lundell v. Anchor Const. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly),* 245 B.R. 768, 773 (2d Cir. BAP 2000) . . . . If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence. *See In re Consumers Realty & Development Co.*, 238 B.R. 418 (8th Cir. BAP 1999); *In re Allegheny International, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992). If, however, the claimant fails to allege facts in the proof of claim that are

> sufficient to support the claim, *e.g.*, by failing to attach sufficient documentation to comply with Fed. R. Bankr. P. 3001(c), the claim is not automatically disallowed; rather, it is merely deprived of any *prima facie* validity which it could otherwise have obtained. *See In re Los Angeles Int'l Airport Hotel Assoc.*, 196 B.R. 134, 139 (9th Cir. BAP 1996).

*Jorczak,* 314 B.R. at 481 (*quoting In re Rally Partners, L.P.*, 306 B.R. 165, 168-69 (Bankr. E.D. Tex. 2003)).

It is well established that the only substantive grounds for disallowance of a claim are expressly set forth in the Bankruptcy Code. *See, e.g., Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.,* 127 S. Ct. 1199 (2007). Accordingly, lack of the documentation required by Rule 3001(c)[13] (which is, *a priori*, a mere procedural rule) is not a *substantive* ground for disallowing a claim. *See, e.g., Campbell v. Verizon Wireless S-CA (In re Campbell),* 336 B.R. 430 (B.A.P. 9th Cir. 2005); *Dove-Nation v. eCast Settlement Corp. (In re Dove-Nation),* 318 B.R. 147 (B.A.P. 8th Cir. 2004). However, as explained below, under some circumstances lack of such documentation followed by a creditor's failure to appear or otherwise respond to an objection (an "Insufficient Doc. Objection") made on the grounds of insufficient annexed documentation may result in a disallowance of the claim on procedural (*i.e.,* default) grounds.

---

[13] Rule 3001(c) provides in relevant part as follows:

> When a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim.

Fed. R. Bankr. P. 3001(c). Rule 3001(c) also provides that "[i]f the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim." A statement in an account summary "warning that the supporting documents may no longer be available . . . is not a sufficient description of the circumstances of the loss or destruction of the writing [to satisfy Rule 3001(c)]." *In re Tran,* 351 B.R. 440, 447 (Bankr. S.D. Tex. 2006), *aff'd*, 369 B.R. 312 (S.D. Tex. 2007).

### B. What Is a Document "Summary" Sufficient To Raise the Presumption?

"Because of the voluminous nature of the supporting documentation [typically] involved with credit card agreements [and other consumer account debt] and the individual transaction records evidencing the debt, Official Form 10 ["Form 10"] allows for a summary to be attached to the claim."[14] *In re Armstrong,* 320 B.R. 97, 105 (Bankr. N.D. Tex. 2005). There is much discussion in the cases with respect to credit card (and other consumer account) debt as to what constitutes a document summary sufficient to satisfy Form 10 and to raise the Presumption when all the supporting documentation is not annexed to the proof of claim.[15] *See, e.g., In re Campbell, supra; In re Dove-Nation, supra; In re Tran, supra; In re Relford, supra; In re Armstrong, supra; In re*

---

[14] The UST suggests that some consumer account debt may be so uncomplicated as to render the use of an account summary inappropriate. However, submission of a summary is an implied statement that the underlying documentation is "voluminous." What is "voluminous" often is in the eye of the beholder. Accordingly, in order to permit the parties to know with certainty the evidentiary effect of the subject proof of claim, this court deems it best to allow the implied statement of "voluminous" documentation to stand for the purpose of triggering (when otherwise appropriate) the objector's obligation (discussed below) to request a review of the underlying documentation.

[15] Courts are in disagreement as to what constitutes the actual writing(s) that form(s) the basis of a retail charge claim. Some contend that the credit card agreement itself forms the basis of the claim. *See In re Tran,* 351 B.R. 440; *In re Henry,* 311 B.R. 813, 817 (Bankr. W.D. Wash. 2004). Others contend that the actual credit charges themselves constitute the basis for the claim. *See In re Cluff,* 313 B.R. 323, 334 (Bankr. D. Utah 2004), *aff'd,* No. 2:04-CV-978 TS, 2006 WL 2820005 (D. Utah Sept. 29, 2006). Yet other courts contend that both the underlying agreement and the actual credit card charges constitute the basis for the claim. *See Heath v. American Express Travel Related Services Co., Inc. (In re Heath),* 331 B.R. 424, 432 (B.A.P. 9th Cir. 2005); *In re Irons,* 343 B.R. 32, 40 (Bankr. N.D.N.Y. 2006); *In re Relford,* 323 B.R. 669, 673 (Bankr. S.D. Ind. 2004). At least one court has ruled that documentation which established the *prima facie* validity of a claim did not necessarily constitute evidence of the *prima facie* amount of the claim. *See In re Irons,* 343 B.R. at 41. It is unnecessary for this court to decide that issue today. Similarly, this court leaves for another day the issue of whether, in the case of a claim assigned prepetition, the instrument of assignment is within the purview of documentation required by Rule 3001(c). *Compare In re Gonzalez,* 356 B.R. 905, 907 (Bankr. S.D. Fla. 2006) (assignment instrument not required) *with In re Hughes,* 313 B.R. 205, 212 (Bankr. E.D Mich. 2004) (instrument showing assignment of specific account required).

*Kemmer,* 315 B.R. 706 (Bankr. E.D. Tenn. 2004); *In re Cluff, supra.* The conclusions reached therein are not entirely in harmony. This court adopts the following standard:

> [I]n the case of a credit card or consumer account creditor, in order for the proof of claim to be given *prima facie* effect, the creditor must attach an account [summary] . . . containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees [collectively, "Other Charges"] that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined.

*In re Armstrong,* 320 B.R. at 106. When the creditor is an account assignee, the proof of claim also must specify either the original account number (and original account creditor) or an account number (and creditor) to which the debtor directed at least one prepetition payment.[16] *Cf. In re Hughes,* 313 B.R. at 212 ("In the event the claimant is an assignee of a debtor's original creditor, a claimant must attach . . . sufficient information to identify the original credit card account.").

However, using a summary in lieu of the actual documentation "requires the creditor to make the underlying documents available for examination at a reasonable place and time." *In re Cluff,* 313 B.R. at 335-36. *See also* Fed. R. Evid. 1006 ("The contents of voluminous writings . . . may be presented in the form of a . . . summary . . . . The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at [a] reasonable time and place . . . . "). Failure of the creditor to respond to requests for documentation may strip the Presumption from the proof of claim. *Cf. In re Heath,* 331 B.R. at 437 ("If the creditor does not provide information . . . then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim.").

---

[16] When accounts are assigned, the assignee typically assigns a new account number. That new number often is unhelpful for purposes of the objector's efforts to identify the relevant alleged debt.

Some courts require that an otherwise valid "summary" be in the form of "a copy of the monthly statement generated for the debtor's account or a computer-generated statement of the debtor's account at the time of the bankruptcy filing . . . , " *In re Kemmer,* 315 B.R. at 716, or otherwise be in the form of a "business record," *In re Burkett,* 329 B.R. 820, 830 (Bankr. S.D. Ohio 2005). This court respectfully disagrees. As noted above, Rule 1006 of the Federal Rules of Evidence validates the use of a document "summary." Rule 1006 does not require that the "summary" itself be in the form of a business record. It is true that a proper foundation ordinarily must be laid for a Rule 1006 "summary." *See, e.g., U.S. v. Behrens,* 689 F.2d 154, 161-62 (10th Cir.), *cert. denied,* 459 U.S. 1088 (1982). However, that observation proves too much because a foundation (*i.e.,* authentication) also must be laid even for an original account document (*see* Fed. R. Evid. 901) and Form 10 does not require that authenticating evidence be filed with the attached original/duplicate supporting document. Moreover, as discussed above, there is the ultimate check that the documents underlying the "summary" must be produced on demand or the Presumption will not apply. Finally, as this court has learned from examining the "summaries" annexed to the POCs here, it cannot always be determined with certainty which "summaries" would be deemed to be in the "form of a business record" and which would not.[17] That produces an unhealthy state of affairs where neither the claimant nor the objector (nor the court) can be certain as to the evidentiary effect of any given proof of claim.

---

[17] *Cf. U.S. v. Gwathney*, 465 F.3d 1133, 1140-41 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 2151 (2007) (The proponent of a document offered for admission under the business record exception to the hearsay rule must lay a proper foundation for its admission.).

### C.     Procedure on an Insufficient Doc. Objection Under Certain Circumstances

Some of the cases suggest that an Insufficient Doc. Objection is itself legally insufficient on its face and ought to be overruled on that basis alone. *See, e.g., In re Moreno,* 341 B.R. 813 (Bankr. S.D. Fla. 2006). However, this court deems that approach to be too rigid. That is because in many cases (and typically when the objection has been made by a trustee) an Insufficient Doc. Objection fairly can be read to object on the grounds that the proof of claim is insufficient (when taken together with the objector's then-existing knowledge base) for the objector to concede the validity of the claim asserted.[18] *Cf. In re Kirkland,* 361 B.R. 199 (Bankr. D.N.M. 2007) (Insufficient Doc. Objection filed by a chapter 7 trustee sustained).

Based upon the standards discussed above, the foregoing may be deduced. If a proof of claim was filed with an account summary sufficient to raise the Presumption as an initial matter, an objector must request a documentation review prior to making an Insufficient Doc. Objection.[19] In other words, when a proof of claim appears to raise the Presumption pursuant to an adequate document "summary," an objector cannot file an Insufficient Doc. Objection in good faith in respect of that proof of claim unless the objector has "tested" the adequacy of the documentation behind the "summary." If no response is received to the objector's document request within two weeks after dispatch or other communication of such request, the objector's obligation to "test" is satisfied and the Insufficient Doc. Objection may be filed.[20] In that event and assuming that there are no

---

[18]    That is in substance, what the Debtor did in the Objections here. The additional averments contained in the Objections may be good practice, but the court does not imply that they always are necessary, particularly when the objector is a trustee.

[19]    In future cases, if the proof of claim provides a valid telephone contact number, that means of communication also should be used to obtain a review of the underlying documentation.

[20]    The court acknowledges that the two-week period is arbitrary but deems it adequate.

unexplained indicia of objector bad faith (see discussion below), failure of the creditor to respond in any manner (formal or informal) to a pre-objection document request and to the Insufficient Doc. Objection itself will result in the sustaining of the Insufficient Doc. Objection (after a hearing on notice)[21] even if the Presumption initially applied.

If the Presumption initially did not apply, the Insufficient Doc. Objection requires at least some response (formal or informal) from the creditor. *See Cluff, supra.* Again assuming that there are no unexplained indicia of objector bad faith, if the creditor fails to respond (either formally or informally) to such an Insufficient Doc. Objection, the objection will be sustained after a hearing on notice.

### D. Bad Faith

Some courts hold that, even if the Presumption does not apply, the proof of claim still is some evidence of the validity of the claim which shifts the burden of production to the objector to go forward with at least some evidence of the claim's invalidity. *See, e.g., Dove-Nation,* 318 B.R. at 152; *Cluff,* 313 B.R. at 340. As noted in *Jorczak,* this court joins those courts that reject that view and hold that, if the Presumption does not apply, the burden of production is on the creditor. *See, e.g., In re Kirkland,* 361 B.R. at 203 ("When a claim lacks prima facie validity, the claimant cannot rest on its proof of claim, but must come forward with sufficient evidence of the claim's validity and amount."); *In re Tran,* 351 B.R. at 447 ("The issue is not whether the proofs of claim constitute 'some' evidence, but whether they constitute 'prima facie evidence' which, if not rebutted, establishes debtor's liability for the claim [in the face of an objection].").

---

[21] The court notes that, in this division of court, the initial hearing on the Insufficient Doc. Objection almost always is "noticed out" as a non-evidentiary hearing.

The court appreciates that the *Dove-Nation* view originates from a desire to deal with potential abuses such as when a debtor lodges an Insufficient Doc. Objection when he or she knows that the claim under attack is valid. (For example, in *Dove-Nation* the chapter 13 debtor conceded that there was no Section 502 basis for disallowance of the claim. *See id.,* 318 B.R. at 150-51.) As indicated in *Jorczak*, this court agrees that an inquiry may be appropriate if circumstances indicate potential objector bad faith.[22] Typically, if the Insufficient Doc. Objection has been made by a trustee, no inquiry need be made. When the objector is not a trustee, more of an inquiry will be appropriate and occasionally evidence will have to be taken and (rarely) sanctions may be appropriate. *Cf. Jorczak,* 314 B.R. at 483 n. 11 ("[W]hen a 'proof of claim' [against an estate surplus] has been filed in a chapter 7 case and the chapter 7 debtor objects to the same but scheduled the relevant claim as undisputed, the burden is on the debtor to offer some adequate level of explanation as to why his scheduling of that claim as undisputed was incorrect."). Here, the court "policed" for any potential Debtor bad faith by requiring submission of the Affidavit. This court intends to follow that procedure in future when the objector is not a trustee and the relevant creditor fails to appear.

## VI.    APPLICATION OF LAW TO FACT

The court is not persuaded that any of the POCs raise the Presumption (as an initial matter) because none of them complies with the requirements set forth above. For example, notwithstanding that the Other Charges Box is unchecked on the POCs, in this context (*i.e.,* consumer account debt) the court deems it unlikely that the relevant Alleged Claims do not contain an element of Other

---

[22] That applies even if the creditor defaults. Although (as noted above) this court has a healthy respect for default principles, this court is not a proponent of the "you-snooze-you-lose" philosophy in all circumstances.

Charges. Moreover, the Max Recovery Claim suggests that relevant documents may be missing but does not explain the circumstances of such loss. Furthermore, in most instances the court suspects that the "account number" is unhelpful. In any event, the Debtor made written requests for documentation as to each POC, and each such request was ignored. (*See* Affidavit.) In addition, the Creditors ignored the Objections and related hearing notices. Finally, the Affidavit satisfies the court that the Objections were not made in bad faith.

## VII. CONCLUSION

For the reasons discussed above, the Objections are sustained (except for Doc. I.D. Nos. 42 and 43) and the related POCs[23] are disallowed. Doc. I.D. Nos. 42 and 43 are moot. It is **SO ORDERED.**

Dated: August 28, 2007                                                      BY THE COURT

                                                                                          **Lorraine Murphy Weil**
                                                                                       **United States Bankruptcy Judge**

---

[23] POC Numbers 9, 10, 11, 15 and 18 are disallowed. As noted above, POC Numbers 1 and 2 have been withdrawn.